## ASSESSMENTS FOR STREET IMPROVEMENTS.

[Circuit Court of Cuyahoga County.]

WILLIAM H. MONROE v. THE CITY OF CLEVELAND.

Decided, March 23, 1907.

*Streets—Assessments for Improving—Law at the Time the Proceeding Began Controls—Assessment in Excess of Statutory Authority—Collection of can not be Enjoined, When.*

1. An assessment for a street improvement must be levied in accordance with the law in force at the time the proceedings having reference to the improvement were begun, and Section 1536-213, as amended, can, therefore, have no application to an assessment which was pending at the time the amendment was enacted.

2. An abutting property owner whose property has been assessed for a street improvement in excess of the amount authorized by law, who voluntarily pays the first installment before the contract for said improvement is let; who continues to pay all installments as they fall due while ne watches in silence tne letting of the contract and completion of the work, and, who accepts all the benefits flowing therefrom, is estopped from enjoining the collection of the excess installments.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

This is an appeal from the judgment of the court of common pleas in an action commenced by William H. Monroe, on behalf of himself and many others, to enjoin the collection of the illegal balance of street improvement assessments levied by the city of Cleveland upon their property abutting on Woodland Hills avenue. The issue is one of law, to-wit, whether a person against whose property an assessment to pay for a public improvement is levied in excess of the amount authorized by law, can, after voluntarily paying the first installment thereof, watch in silence the letting of the contract and the completion of the improvement, accept all the benefits thereof, and then enjoin the collection of the excess installments.

The city maintains that under these circumstances the plaintiff is estopped to maintain his action.

The controlling facts in the case are substantially as follows: In May, 1903, the council of the city of Cleveland, desiring to

pave and improve three several sections of Woodland Hills avenue, passed three declaratory resolutions to that end. In June, 1903, it passed ordinances, providing that the cost of said improvement, less the city's portion, should be assessed upon the abutting lands according to benefits and in ten annual installments. In July, 1903, a copy thereof was served on each of the abutting owners. In September, 1903, council passed ordinances to proceed with the improvement, to assess the cost thereof in the manner aforesaid at the rate of thirty-three per cent. of the tax value of the land assessed, and to issue bonds in anticipation of the collection of such assessment.

At this point the proceedings were suspended and nothing more was done until after the amendment of Section 53 of the municipal code (Section 1536-213, Revised Statutes), passed April 21, 1904. Before the amendment, such assessments could not be levied in any five years to an amount "exceeding thirty-three per cent. of the tax value" of the property subject thereto. After the amendment, the limit was raised to "thirty-three and one-third per cent. of the actual value thereof after improvement is made."

After the passage of this amendment, the city council, in May, 1904, passed new ordinances to proceed with said improvement, and thereby repealed the former ordinances and levied the assessments on the new basis. In June, 1904, notice of this assessment was duly published in Cleveland newspapers.

In July, 1904, no objections having been filed, council confirmed the estimated assessments. In August, 1904, council levied the special assessments accordingly. In December, 1904, plaintiff, and the other property owners paid, without protest, the first semi-annual installment of said assessments. In May, 1905, the city awarded the contract for the improvement. In June, 1905, the second semi-annual installment of the assessments was paid, and work on the improvement was begun. In December, 1905, the third semi-annual installment of the assessments was paid and work on the improvement was completed. The total cost of the improvement was $114,388.10, and bonds to the amount of $89,395 have been issued in anticipation of the collection of the assessments to pay therefor.

In June, 1906, plaintiff commenced this action upon the theory that the rule of assessment obtaining at the time the improvement proceedings were begun could not lawfully be departed from, that the amendment of Section 1536-213, Revised Statutes, could have no application to pending improvement proceedings, and that the installments already paid amounted substantially to thirty-three per cent. of the tax value of their property, whereas the assessments as actually levied under the new rule were many times that amount.

In December, 1906, this theory was apparently approved by the Supreme Court of Ohio, when it affirmed, without report, the judgment in a Lucas county case involving that precise question (*Toledo* v. *Marlow et al*, 8 C. C.,—N. S., 121; see 4 Ohio Law Reporter, 440). It being thus conceded that the assessments are excessive, the sole remaining question is whether plaintiff and those whom he represents are estopped to complain thereof. It is not denied that the city had power to make and pay for the improvement, nor that the abutting property is actually benefited thereby.

In support of the estoppel the city relies on *Tone* v. *Columbus*, 39 O. S., 281. Against the alleged estoppel the plaintiff invokes the rule of *Wright* v. *Thomas*, 26 O. S., 346, and *Columbus* v. *Agler*, 44 O. S., 485. Paragraph 5 of the syllabus of *Tone* v. *Columbus* is as follows:

"Active participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessment; but to create an estoppel from silence merely, it must be shown that the owner had knowledge: 1. That the improvement was being made; 2. That it was intended to assess the cost thereof, or some part of it, upon his property; 3. That the infirmity or defect in the proceedings existed which he is to be estopped from asserting; and 4. It must appear that some special benefit accrued to his property from such improvement which it is inequitable, under the circumstances, he should enjoy without compensation."

In *Wright* v. *Thomas* and *Columbus* v. *Agler*, *supra*, it was held that where a person, against whose property an assessment is unlawfully levied to pay for a public improvement, has not

been a promoter of the same, though aware that such improvement, beneficial to said property, was being made, such owner may remain silent, until the improvement is completed, without being estopped to enjoin the collection of said assessment or being called upon to do anything until steps are taken to make the asssessment upon said property. Both cases are expressly distinguished from *Kellogg* v. *Ely,* 15 O. S., 64, where the making of the improvement involved an actual trespass upon the property assessed.

In *Lewis, Auditor, etc.,* v. *Symmes et al,* 61 O. S., 471, paragraph 2 of the syllabus is as follows:

"The owner of lands within an assessment district defined in an unconstitutional act for the improvement of a public highway, not having promoted the making of the improvement, may enjoin the collection of an assessment to pay for such improvement in a suit for that purpose begun when an attempt is made to enforce the assessment. He is not required to begin such suit at an earlier day, though he may know of the improvement and of the intention to make the assessment. *Columbus* v. *Agler,* 44 Ohio St., 485, followed."

In the opinion of the court by Shauck, J., at p. 488, speaking of *Tone* v. *Columbus,* and *Columbus* v. *Agler, supra,* it is said:

"The relation of these cases is intimate. The later case arose in the Circuit Court of Franklin County where that court, as the successor of the district court, was engaged in determining the validity of assessments for the improvement of High street, pursuant to the mandate of the court in the *Tone* case, and in the later case it was determined that inasmuch as the public, in making the unauthorized improvement, was upon a street which it owned and was not a trespasser as to Mrs. Agler, 'she was not required to do anything until steps were taken to make the assessments upon her property.' The application of this doctrine to the cases before us is obvious. If, therefore, *Tone* v. *Columbus* would justify the purpose for which it is cited, it must be regarded as modified by *Columbus* v. *Agler.* That it was not intended to give such important effect to a void enactment should be inferred from the fact that the court did not either overrule or modify *Wright* v. *Thomas,* 26 Ohio St., 346, which is full authority for the proposition that the doctrine of estoppel can not be invoked in a case of this character."

In *Cincinnati* v. *James et al*, 55 O. S., 180, the syllabus is as follows:

"1. When an assessment for a street improvement, whether payable in installments or not, is larger than allowed by law, and sufficient has been paid, though voluntarily, to equal or exceed the amount which could be lawfully assessed, the collection of the remainder of such assessment may be enjoined.

"2. In such case the action is not to recover payments already made, but to prevent the collection of unpaid illegal installments."

In that case, however, the city, in assessing per foot front certain corner lots of which the 105-foot side, instead of the 35-foot front, abutted on the improvement, had taken the latter instead of the former as the assessable frontage, thereby making the assessment thrice as large as it could lawfully be under the rule of *Haviland* v. *Columbus*, 50 Ohio St., 471. The question of estoppel was not raised, as shown in the statement of facts at p. 181:

"The city claimed that the six payments already made, were voluntary payments, and that the adjustment, under the rule in the Haviland case, should be only as to the unpaid four installments, and to test that question brought this case here on error, seeking to reverse the judgment of the general term."

It is true that this court in *Metcalf* v. *Carter*, 19 C. C., 196, held upon the authority of *Cincinnati* v. *James, supra*, that:

"(1). A property owner whose property has been assessed for a street improvement, who, without objection, has known that the assessment was made, and has seen the work going on, and paid three installments of the assessment, is not after that estopped from instituting a suit for enjoining the collection of further installments of such assessments."

But in that case, for aught that appears, the installments were paid after, and not, as in the present case, before the improvement was made. Indeed the present case is unique in this, that the first installment was voluntarily paid by plaintiff and all whom he represents, before the contract for the improvement was let. And they all continued to pay without protest, until the

improvement was completed.  They arc thus held to a knowledge at that time of all that they now complain of.  And we think this circumstance suffices to distinguish the present case from *Wright* v. *Thomas, Columbus* v. *Agler,* and *Lewis* v. *Symmes, supra,* and to bring it within the rule of *Kellogg* v. *Ely* and *Tone* v. *Columbus.*  In going forward with the improvement the city relied upon the acquiescence of this plaintiff and those whom he represents in the assessment as actually made, as shown by their voluntary payment of the first installment, and their continuance of such payments with knowledge that the work was being done to their benefit and in the expectation that they would pay for it in the manner already determined.

The philosophy of the doctrine of equitable estoppel is clearly set forth in a manner plainly decisive of this case in *Columbus* v. *Street Railroad Co.,* 45 Ohio St., 98, 107, where it is said:

"In equity whenever the rights of other parties have intervened, by reason of a man's conduct or acquiescence in a state of things, about which he had an election, and his conduct or acquiescence, or even laches, was based on a knowledge of the facts, he will be deemed to have made an effectual election; and he will not be permitted to disturb the state of things, whatever may have been his rights at first."[e]

The plaintiff's petition is therefore dismissed.

*William Howell,* for plaintiff.

*Newton D. Baker,* City Solicitor for the city of Cleveland, and *Harry Payer,* Assistant City Solicitor for the city of Cleveland, for defendant.